UNITED STATES DISTRICT COURT OF MAINE
EDWARD T. GIGNOUX
U.S. COURTHOUSE
156 FEDERAL STREET
PORTLAND, ME 04101

U.S. DISTRICT COURT
DISTRICT OF MAINE
PORTLAND
RECEIVED & FILED
JAN 16 2026
ERIC M. STORMS, CLERK
BY_____
DEPUTY CLERK

| | |
|---|---|
| MAKETA S. JOLLY<br><br>Plaintiff,<br><br>vs.<br><br>JENNIFER B COLIN, PERSONAL AND PROFESSIONAL CAPACITY, VERMONT PROFESSIONAL AND OCCUPATIONAL AFFAIRS<br><br>Defendant | Case No.:<br><br><br>**MOTION TO SEAL IDENTITY/ FILE UNDER SEAL** |

# Motion to Seal (or "Motion to Restrict Access")

It appears that the complexities arising from complaints filed with state agencies have impeded the accountability of attorneys and others who utilized administrative boards to generate official state materials. These state actions seem to have denied access to judicial redress and inflicted financial and reputational damage through the state's adjudication boards, operating without a basis in law: and standard due process. The Supreme Court of Pennsylvania declared the State Ethics Act unconstitutional, asserting that it infringed upon the court's inherent and exclusive authority to regulate the conduct of legal practitioners. This motion incorporates materials obtained through Right to Know law requests and indicts the unprofessional acts of state attorneys who may have engaged in criminal or civil disruptive acts.

Between 2017 and 2023, complaints were lodged with state agencies concerning unauthorized and unwarranted intrusion into Dr. Jolly's demographic materials located within state agencies. Records suggest that attorneys employed with the Pennsylvania Department of State, specifically, Pennsylvania Board of Nursing have deliberately created disinformation materials, allegedly initiated at the request of a

MOTION TO SEAL IDENTITY/ FILE UNDER SEAL - 1

New York law firm, Kaufman, Borgeesst, and Ryan. Much of the information purportedly received by the state was reliant upon a single factfinder within a multi-system process. More recent records indicate that the New Jersey Adjudication Report dated May 14, 2020, appears to have been deliberately distributed to state offices through the law firm Kaufman, Borgeesst, and Ryan, who allegedly maintains subcontracted legal contracts with the States of Pennsylvania and New Jersey Boards of Nursing. The fraudulent New Jersey Adjudication appears to have been developed during the nations COVID-19 pandemic, whereby in-person judicial proceedings were suspended.

As much of the alleged lawyer corruption developed during the global pandemic, it is asserted that state attorneys reasonably knew that the public file they created—using wrongfully obtained demographic materials of Dr. Jolly—would violate her constitutional rights and appear unlawful. Moreover, state attorneys developed materials citing criminal misconduct and a host of other anomalies. Given the state's significant influence, it is alleged that a power broker within the State of Pennsylvania has developed disinformation materials that have injured the lives of Black women and, furthermore, filed fraudulent federal reports that incite Medicaid Fraud, despite the absence of Medicaid convictions. Let's be concise in this messaging, should the state learn that the Court of Common Pleas, Philadelphia judicial members are investigating or has gained access to fraudulent state materials, the Pennsylvania power broker, this includes the Pennsylvania Attorney General will contact powerful judicial persons to quash this judicial filing in an effort to remain hidden.

Should this case be filed atypically, it would be in the best interest of all parties to prevent the tampering of judicial cases and the calling in of favors thereby upholding the rule of law. Based upon purported telephone calls and alleged attorney requests, state agencies revoked the professional licenses of minority individuals, including Dr. Jolly to prevent her from, or attempts to cease the release of potential sensitive investment misconduct of the law firm's client, Blackstone. To do this, it is believed that the law firm may

MOTION TO SEAL IDENTITY/ FILE UNDER SEAL - 2

have engaged in persecution and prosecutorial actions against Dr. Jolly, a minority, without adhering to due process procedures using their subcontracted legal agreements at the state-level.

The Disciplinary Sector of the Supreme Court of Pennsylvania received an estimated ten separate complaints alleging the unlawful use of Dr. Jolly's demographic materials by state attorneys. These materials were reportedly used to produce official documents that resulted in criminal convictions without notification, nor due process hearings and trials. On multiple occasions, the State failed to investigate and/or take appropriate action to hold the state attorney liable for developing disinformation materials that ultimately corrupted the judicial process. State materials referenced Medicaid Fraud, fraudulent business conduct, and a host of other anomalies.

It is evident, however, that the State and other foreign actors have contacted various agencies seeking assistance in concealing criminal and civil rights violations against Dr. Jolly. In essence, state agencies protected the wrongdoers by failing to conduct investigations, rectify Dr. Jolly's public reputation, and strip her of her available financial resources. The State intensified its efforts, utilizing Dr. Jolly's materials to claim that she was scandalous, a scammer, and making numerous other defamatory statements, despite Dr. Jolly never having been successfully prosecuted for any criminal or civil act in the State of Pennsylvania. This appears to have been a situation where a state attorney performed favors for purposes of political and/or occupational advancement.

## Request for Seal

Pursuant to Rule 2005 Dr. Jolly respectfully requests to be identified as Jane Doe. Dr. Jolly's demographic and licensure materials were misused by State officials and tertiary state agencies without her knowledge, request, or approval, without a basis in law. State access to Dr. Jolly's demographic and licensure materials was not associated with state employment duties; rather, state attorneys, acting independently, utilized state repositories to develop false light narratives. This ultimately caused numerous instances of

MOTION TO SEAL IDENTITY/ FILE UNDER SEAL - 3

invasion of privacy and grave emotional distress, stemming from a non-minority male attorney who has engaged in acts that perpetuated continual oppression and suppression of Dr. Jolly's constitutional, due process, and civil rights. *Doe v. Zarkin, No. 5383 S 1996, 1998 WL 1093460 (Pa. D. & C.4th 1998)*,

The official actions of state and local government officials, which are contrary to law, have led to the suppression and oppression of minority citizens in Pennsylvania, including "Dr. Jolly," thereby necessitating judicial intervention. It appears that a powerful, possibly clandestine, Pennsylvania figure commanded state employees to employ unsolicited tactics of suppression and oppression designed to malign and deprive Dr. Jolly, a minority of judicial redress.

State agents, through the exercise of governmental authority, have reportedly acted as a mechanism of oppression and suppression. This action appears intended to assist a New York law firm, Kaufman, Borgeesst, and Ryan, in preventing the discovery of its involvement in alleged illegal acts. Kaufman, Borgeesst, and Ryan, a Manhattan-based firm, is accused of leveraging its influence within the state government of Pennsylvania to control the unauthorized disclosure of information related to its submission of false, erroneous, and disinformation materials.

Fraudulent documents in state administrative procedures are illegal and should result in criminal charges and civil penalties. Laws like Pennsylvania's 18 Pa. Code § 321.9 and federal statutes, such as 8 U.S.C. § 1324c and 18 U.S.C. § 1001, specifically prohibit knowingly and willfully making false statements, creating false documents, or using forged documents to deceive or defraud. This involves submitting documents with false information on purpose. State of New Jersey reasonably understood that it lacked jurisdiction, and reasonably understood that federal and state COVID-19 orders would preclude Dr. Jolly's attendance with New Jersey Administrative procedures.

MOTION TO SEAL IDENTITY/ FILE UNDER SEAL - 4

It appears that the Commonwealth of Pennsylvania state agencies may have orchestrated a deliberate and systematic pattern of procedural denials through the actions of court clerks, administrative personnel, and other judicial partners. This concerted effort was seemingly designed to obstruct the merits of Dr. Jolly's grievances. Specifically, the intent was to ensure that Dr. Jolly's formal complaints and requests for official investigations were summarily denied, not on substantive grounds, but through the consistent application of procedural acts. These denials, though presented under the guise of routine employment-related administrative or jurisdictional decisions, effectively prevented a full and fair review of the substantive issues raised by Dr. Jolly, suggesting a potentially improper manipulation of the judicial and administrative process to insulate the state from accountability.

Across the breadth of these egregious state boundary complaints, a distressing pattern emerges it is demonstrably accurate to assert that certain state attorneys have acted as direct aggravators of contempt. These actions, undertaken on behalf of the Commonwealth of Pennsylvania, have resulted in the weaponization of the full coercive force of the government. This systemic force has been ruthlessly deployed to systematically strangle Dr. Jolly's business interests, professional standing, and hard-earned reputation, all in direct opposition to her documented financial acumen.

State-level corruption has been shaped significantly by federal and state court precedents interpreting bribery, honest-services fraud, extortion under color of official right, and misuse of public office. One of the most influential cases is *McDonnell v. United States*, 579 U.S. 550 (2016), in which the Supreme Court vacated the corruption conviction of former Virginia Governor Robert McDonnell. The Court narrowed the definition of an "official act" under

MOTION TO SEAL IDENTITY/ FILE UNDER SEAL - 5

federal bribery laws, holding that merely arranging meetings, contacting other officials, or hosting events did not, without more, constitute an official governmental decision or action. This ruling has since constrained the scope of federal prosecutions involving state officials by requiring a closer nexus between the alleged benefit and a concrete exercise of governmental power.

Corruption investigations involving state actors reached the Court in *Kelly v. United States*, 590 U.S. ___ (2020), commonly known as the "Bridgegate" case. Although the scheme involved clear misuse of governmental authority by New Jersey state officials for political retaliation, the Court reversed the convictions because the federal fraud statutes at issue require a scheme to obtain money or property. The Court concluded that the defendants' conduct, while abusive and deceptive, did not aim to obtain property, and therefore did not fall within the reach of the federal statutes used by prosecutors. Kelly further limited the types of state-level misconduct that can be prosecuted federally.

The allegations are not limited to isolated incidents. Instead, they paint a picture of a pervasive network of misconduct. The complaint specifically references "components of state level corruption," suggesting a coordinated effort that reaches into various levels or branches of the state government. To fully comprehend the breadth of this corruption—to trace its origins, understand its mechanisms, and identify all affected areas—ECRG investigation must proceed with the utmost discretion. The current, limited visibility of the complaint is essential for establishing the true scope and impact of these alleged illegal activities without alerting those who would seek to obstruct justice.

**The Genesis of ECRG**

MOTION TO SEAL IDENTITY/ FILE UNDER SEAL - 6

Around 2017, Dr. Jolly spearheaded a new professional endeavor with the founding of the Education Consultants and Research Group (ECRG). This business was conceptualized and established with a clear mandate: to conduct rigorous research into educational deficiencies and to analyze the systemic policy impairments disproportionately affecting urban and rural communities. The intellectual foundation for ECRG's research was deeply rooted in the extensive graduate and postgraduate academic submissions authored by Dr. Jolly, ensuring a scholarly and well-informed approach to complex socio-educational issues.

In the midst of ECRG's operations, the firm—a small, minority-owned research organization—began receiving urgent requests for assistance from consumers in Pennsylvania and other jurisdictions. These individuals had become entangled in a pervasive financial scheme that appeared to be a statewide Ponzi operation, allegedly brokered out of Chicago, Illinois.

The core context of the inquiries centered on a sophisticated and concerning pattern of housing abuses. ECRG clients detailed how a Chicago-born Real-Estate Investment Trust (REIT) had aggressively infiltrated the Pennsylvania housing market. The consequences were severe: this infiltration allegedly deprived Pennsylvania citizens of access to genuinely affordable, safe, and viable alternative mortgage options. This situation was reportedly documented and discussed on an external website, further underscoring the public nature of the alleged abuses.

ECRG initiated successive, detailed inquiries into a product marketed as the "Right to Purchase" mortgage alternative. As the research progressed, it uncovered evidence suggesting that the financial resources of scores of unsuspecting Americans had been systematically liquidated. This liquidation was reportedly executed through the process of asset-backed securities and the

MOTION TO SEAL IDENTITY/ FILE UNDER SEAL - 7

subsequent ushering of funds offshore, a serious claim corroborated by public dockets and legal filings.

Dr. Jolly's work quickly transcended a simple investigation of housing practices. The firm's research extended to identifying and documenting the participation of a host of powerful and influential persons in Pennsylvania, New Jersey, New York, and Chicago, IL, Real Estate Investment Trust (REIT). The network of alleged participants was expansive, reportedly including complicit politicians, influential lawyers, major business figures, and other high-ranking individuals whose involvement facilitated and perpetuated the financial malfeasance associated with the REIT. ECRG's efforts thus shifted from an academic research mandate to actively exposing a large-scale, coordinated financial conspiracy with significant legal and political dimensions.

ECRG, Dr. Jolly's firm, determined that the law firm Kaufman, Borgeesst, and Ryan appears to represent influential governors and administrative departments within Pennsylvania and New Jersey. Through subcontracted legal participation, the law firm allegedly infiltrated the state, subsequently developing fraudulent documents that state attorneys submitted into federal repositories as ostensibly truthful. This action ultimately served to malign the characters of minority women, specifically Dr. Jolly as one of sixty-five women whose professional careers were reportedly destroyed by state attorneys who enacted civil abuses against them, which appears to undermine her (Dr. Jolly's) ability to earn a living. Dr. Jolly's private business transactions were exploited by state agents, who cited flawed academic data suggesting Dr. Jolly was academically deficient, a "welfare queen," fraudulent, and dishonest using administrative boards. Through what appears to be state-sanctioned bait-and-switch tactics, state attorneys cited

MOTION TO SEAL IDENTITY/ FILE UNDER SEAL - 8

business transactions as evidence of healthcare practitioner impropriety and, in doing so, submitted fraudulent Medicaid invoices to federal agencies as that of Dr. Jolly. All these state actions were taken without her having been convicted in a court of law, nor summoned before one for improper misconduct.

The immediate necessity to shield Dr. Jolly's Motion and subsequent judicial submissions, is a comprehensive and transparent request given the wrongful retrieval of data from the repositories of the Pennsylvania Board of Nursing. This demand is critical because, through diligent investigation, it has been established that highly sensitive and career-damaging materials were submitted into both the congressional databank, National Practitioner Databank (NPDB). Crucially, these submissions were not generated internally by a state agency; rather, they were enacted through the intermediary of a state-subcontracted private law firm, specifically identified as Kaufman, Borgeesst, and Ryan. This outsourcing of governmental function raises profound questions regarding the chain of custody, the verification of submitted data, and the inherent conflict of interest when private entities are utilized to execute punitive actions with such severe, far-reaching professional consequences. The Commonwealth's use of a private firm to execute submissions to national and federal databases effectively shields the state from direct accountability while exponentially increasing the difficulty for Dr. Jolly to seek appropriate legal redress and professional exoneration.

Furthermore, it appears that the Commonwealth of Pennsylvania knowingly submitted fraudulent documents to the National Practitioners Data Bank, a congressionally mandated repository. The Commonwealth of Pennsylvania seems to have established a de jure governmental process that resulted in the revocation of Dr. Jolly's professional licensure, and the State has deliberately

MOTION TO SEAL IDENTITY/ FILE UNDER SEAL - 9

disseminated fraudulent materials as truthful, despite them being categorically false representations of authenticity.

Pennsylvania courts have established that state organizations that collect and store digital data have a common law duty to exercise reasonable care to protect that data from being breached. This duty arises from "affirmative conduct," which includes the collection and storage of data, and extends to third-party criminal acts that could have been prevented with reasonable care. Article I, section 8 of the Pennsylvania Constitution protects citizens from unreasonable searches and seizures, which can be a legal basis for challenging the unauthorized access of citizen data.

This grave and protracted legal dispute stems from a fundamentally flawed foundation: a fraudulent adjudication report. The origins and authorship of this spurious document remain unknown, yet it served as the sole, or at least a critical, piece of evidence underpinning the State's administrative nurse adjudication procedure concerning Dr. Jolly. The integrity of the subsequent professional review by the Pennsylvania Board of Nursing is fatally compromised by its reliance on this false and fraudulent document.

Furthermore, a significant procedural failing compounded this initial fraud. The Pennsylvania Board of Nursing proceeded with the entire adjudication in Dr. Jolly's absence. An examination of the official record strongly suggests that the State compiled its internal and public-facing materials through unauthorized and illicit access to Dr. Jolly's personal and demographic information within state repositories. This security breach and subsequent misuse of private data cast a long shadow over the entire process.

In this sequence of events—relying on a fraudulent report, utilizing unlawfully accessed personal

MOTION TO SEAL IDENTITY/ FILE UNDER SEAL - 10

data, and falsely purported to have conducted a formal hearing *in absentia*—the state agencies demonstrated a profound and systemic failure to uphold the most basic tenets of constitutional law. The State failed to afford Dr. Jolly with both substantive and procedural due process. Specifically, the State neglected to provide the minimal, indispensable requirements of due process: adequate notification of the charges and the proceedings, and a meaningful right to be heard and present a defense against the allegations. This lack of due process represents not merely a technical error but a fundamental violation of Dr. Jolly's constitutional rights and the principles of administrative fairness.

The integrity of this public record is a matter of profound concern, particularly considering that the private information of Dr. Jolly, and countless other Pennsylvanians, is securely maintained at the state level. The alarming issue arises from the revelation that state actors, specifically employees of the Pennsylvania Department of State, accessed Dr. Jolly's confidential records. This access, regrettably, was not necessitated by a matter of pressing public safety but was undertaken solely for the purpose of issuing a Board of Nursing Adjudication ("adverse report"). This action appears to have been taken in retaliation for Dr. Jolly's participation in federal class-action litigation against Excelsior College d/b/a Excelsior University, a client of Kaufman, Borgeesst and Ryan. Kaufman, Borgeesst, and Ryan appear to be similarly situated as Mossack Fonseca. A primary reason for the protective order of sealing is the need to securely identify all individuals who "may have engaged in corrupt acts." This list of potential participants extends beyond named defendants and may include current or former governmental officials who have exploited their positions for illicit gain. Allowing these individuals access to the details of the complaint at this nascent stage would afford them an unearned advantage, enabling them to coordinate their defenses, destroy incriminating documentation, or influence the narratives of

MOTION TO SEAL IDENTITY/ FILE UNDER SEAL - 11

potential witnesses. The seal is a critical tool for protecting the anonymity of key witnesses and informants who are providing information regarding high-level state officials.

This action was reportedly an attempt to create a false light narrative for the public, asserting that she (Dr. Jolly) sought employment using a fraudulent New Jersey Registered Nurse license. This allegation has been determined to be categorically false and was disproven through a comprehensive record review. Todd Patrick Kriner, Prosecutor for the Pennsylvania Board of Nursing, allegedly developed an adjudication report after gaining unauthorized access to my demographic information. Furthermore, he is accused of utilizing tertiary state information repositories to locate and cite Dr. Jolly's employment as a nurse with Temple and University of Pennsylvania Hospitals. Neither Temple University Hospital nor the University of Pennsylvania has made any allegations that he reports in the purported initial state hearing adjudication. Instead, he reportedly fabricated this information using a state repository to generate a false narrative that included Excelsior College as its basis.

The unauthorized use of an individual's personal demographic information warrants serious judicial scrutiny, particularly given that the procedures employed by the Pennsylvania Board of Nursing appear to be predicated upon allegations ostensibly received during the pandemic. Two years following the dissemination of the fabricated New Jersey adjudication report, Kriner acted against Dr. Jolly's remaining Pennsylvania Licensed Practical Nurse license without prior notification. There are no readily accessible public records to indicate that the State of New Jersey afforded Dr. Jolly appropriate procedural and substantive due process. Furthermore, there is no substantive evidence from the State of New Jersey to suggest that Dr. Jolly ever applied for Licensed Practical Nurse privileges in that state.

MOTION TO SEAL IDENTITY/ FILE UNDER SEAL - 12

Within the context of the State's Board of Nursing adjudication document, a critical reference is made to a purported New Jersey Adjudication Final Report. This New Jersey report is alleged to have been issued on May 14, 2020, a time that coincided with the devastating and unprecedented height of the nation's COVID-19 pandemic.

With the historical context of the pandemic in mind, a dedicated team of tertiary attorneys has been instrumental in assisting Dr. Jolly. Their mandate has been to comprehensively investigate and uncover the full breadth and depth of state actors who were wrongfully gaining access to her sensitive demographic materials. Subsequently, these state actors proceeded to develop and enforce state disciplinary measures based on this unauthorized access and unknown evidentiary materials.

A central point of contention and a grave flaw in the State's case is its reliance on foreign state materials, which have now been discovered to be fundamentally fraudulent. This fraudulent nature is evidenced by the fact that each of these foreign documents repeatedly and erroneously refers to Dr. Jolly as having attended the non-existent "Pennsylvania Welfare College." This factual inaccuracy alone casts serious doubt on the entire basis and integrity of the disciplinary action taken by the Pennsylvania Board of Nursing. The unwarranted and unlawful access to private information, coupled with the reliance on demonstrably false foreign materials, represents a significant breach of trust and a potential violation of due process for Dr. Jolly.

This stereotype, which gained prominence in political discourse in the 1970s and 1980s, falsely portrays Black women as lazy, dishonest, and dependent on government assistance. Pennsylvania Welfare College is no mere coincidence, rather a deliberate strike at Dr. Jolly employment efficacy, and further using the state to defame her public persona as a "Welfare

MOTION TO SEAL IDENTITY/ FILE UNDER SEAL - 13

Queen", for which Dr. Jolly nor her children are recipients of federal or state welfare or Medicaid programs. The term "welfare," particularly through the prevalent "welfare queen" stereotype, has been employed to characterize Black women in a profoundly negative, prejudicial, and racially charged manner.

The heightened sensitivity surrounding this matter, compounded by continuous and unwarranted state actions involving access to Dr. Jolly's state-bound records, suggests a more significant systemic issue within the State government. Although complaints and evidentiary materials were submitted to the Pennsylvania Supreme Court Disciplinary Review Board, the State has yet to hold the attorneys accountable for accessing and developing fraudulent materials targeting Dr. Jolly, a minority female. Given the State's apparent complicity in these issues, this matter urgently necessitates judicial review and consideration to alleviate the oppression established by its employees against Dr. Jolly's professional standing and financial interests. Should the judiciary fail to ensure accountability or bar access to Dr. Jolly's personal materials, federal intervention may become necessary, as this ultimately impacts the lives of the African American population.

Therefore, we respectfully request that the Court accept this matter under seal. To protect Dr. Jolly from continued public scrutiny, a protective mechanism must remain in place such as: Jane Doe, until proper adjudication of the issues has occurred.

Best regards,

/s/

Dr. Maketa S. Jolly

MOTION TO SEAL IDENTITY/ FILE UNDER SEAL - 14

Dated this November 28, 2025.

_____
[Filed Pro Se ]

# ORDER

    And now this day_____20__, the Court of Common Pleas does hereby (GRANT) _____ (DENY)_____ Dr. Jolly's request to file motions and complaints under the complaint caption Jane Doe, or J. Doe.

    Respectfully,

    /s/

    Dr. Maketa S. Jolly

MOTION TO SEAL IDENTITY/ FILE UNDER SEAL - 15